# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| | ) | Case No. 20-07420 |
| **LYNDON D. TAYLOR,** | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |
| | ) | |
| **KAPITUS SERVICING, INC., as subservicing agent for KAPITUS, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 20-00221 |
| | ) | |
| | ) | |
| **LYNDON D. TAYLOR,** | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT TAYLOR'S MOTION TO DISMISS

Kapitus Servicing, Inc., as sub-servicing agent for Kapitus LLC ("Kapitus" or "Plaintiff"), responds to Lyndon D. Taylor's ("Defendant" or "Debtor") Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff's complaint seeks a determination that the debt owed is non-dischargeable pursuant to § 523(a)(2)(B) (Count I of Amended Complaint), and § 523(a)(4) (Count II of Amended Complaint). As to Count I, Defendant recycles his argument from his last motion – he contends that his application for funding was the *only* written representations he made regarding his financial condition. In so doing, Defendant ignores the allegations in the Amended Complaint, which detail his written representations made throughout the process of applying for funding from Kapitus. As to Defendant's attack on Count II alleging § 523(a)(4), the Amended Complaint contains the details of the "who, what, where, when and

why" sufficient to meet Rule 9(b) requirements, and it alleges both that a fiduciary duty existed between the parties prior to Defendant's fraudulent defalcations and that Defendant committed embezzlement by using receipts owned by Kapitus, which Defendant had been entrusted to collect on behalf of Kapitus. Although a creditor need only prevail on one basis for a debt to be found non-dischargeable, here both counts of the Amended Complaint provide an equally solid footing for such a finding and Defendant's motion should accordingly be denied.

## FACTUAL BACKGROUND

Merchant is a medical practice and Defendant is its sole medical doctor. Am. Compl. ¶ 7. Merchant entered the Future Receivables Factoring Agreement ("Agreement") with Kapitus, signing the Agreement both as the representative of Merchant and as Guarantor. *Id.* ¶ 22. Merchant and Defendant sold receivables of $92,400 to Kapitus, and under the Agreement, Merchant was required to make weekly payments of $890 (the "Specified Amount"). *Id.* Ex. B. As discussed in more detail below, Defendant applied for financing at a time when he knew – but did not disclose – that the sole hospital where he was on staff was on the verge of failure.

On May 7, 2018 (and reaffirmed on June 26, 2018), Defendant completed an application from Bankers Healthcare Group, LLC ("Application"), seeking $150,000 in financing for "business development" and stating that Merchant had gross sales of $191,364 the prior year. *Id.* Ex. A. This Application states that the information contained in it may be relied on by assignees of Bankers Healthcare Group, and that assignees may use the application in connection with potential transactions. *Id.* As part of the representations in the Application, Defendant represented that he would "immediately notify" Bankers Healthcare Group of "any change in the information or documents provided" or of any change to "Applicant's financial condition." *Id.*

2

After the Application was submitted to Kapitus, it required Defendant to provide bank statements and other financial information from Defendant on August 21, 2019.  *Id.* ¶¶ 12-17. After collecting, among other things, Merchant's bank statements for May, June, and July of 2019, *see id*. ¶¶ 15-16, the next step in the application process was for Defendant to provide a copy of the Agreement to Defendant for his acceptance and review. *Id.* ¶ 17.  Only after Defendant agreed to and executed the Agreement did Kapitus complete its underwriting process and decide to provide the requested funding.  *Id.* ¶¶ 17-18.

In executing the Agreement, Defendant agreed in writing to the following representation and warranty: "no material changes, financial or otherwise, in the condition, operation or ownership of Merchant are in any way expected or anticipated." *Id.* ¶ 21.  In fact, Defendant's financial picture had changed materially with the closing of Westlake Hospital.  Westlake Hospital closed its doors on August 6, 2019, and filed for Chapter 7 bankruptcy. *Id.* ¶ 29, Ex. D. As a physician on staff at Westlake, Defendant received word that the hospital but failed to advise Kapitus of this material fact during the underwriting process. *Id.* ¶ 29, Ex. D.

Despite knowing that Westlake had closed on August 6, 2019, Defendant signed the Agreement on August 26, 2019, *id.* Ex. B, where he affirmatively represented that there were no material changes.  Three days later, on August 29, 2019, in a Pre-Funding Call, Defendant made oral statements bolstering the written business and financial information that Defendant had previously provided and affirming his obligation to advise Kapitus of any changes relating to his practice. *Id.* ¶¶ 27-28.  On the same day, August 29, 2019, Kapitus disbursed the funds to Defendant.

The closing of Westlake Hospital impacted Defendant in two ways.  First, as he later averred in his Proof of Claim in the Westlake bankruptcy, he was owed $77,280 in fees, the large

majority of which were unlikely to be collectible given Westlake's Chapter 7 filing. *Id.* ¶ 30. [1]
And second, Defendant knew that with the closing of the sole hospital where he had privileges, his practice would not generate the nearly $200,000 in income he disclosed in his written application or the monthly income reflected in his bank statements. *Id.* In fact, by the time of Defendant's bankruptcy filing in March of 2020, he claimed only $5,000 of monthly income. *See* Schedule I. Rather than disclosing Westlake's closing and its known impact on Merchant's financial condition, Defendant represented in writing that he had no information that constituted a "material change." Not until four and one-half months later – after Defendant took the Kapitus funding and defaulted on the Agreement – did Defendant use the hospital's closure as a reason to justify why Merchant had ceased making payments *Id.* ¶ 38.

Yet even with the closing of Westlake Hospital, Defendant continues to practice medicine, as evidenced by Merchant's website and the statements by members of his office staff that he could not take the telephone calls of Kapitus representative because he was "seeing patients." *Id.* ¶ 39. Nevertheless, Kapitus has not received a single payment since December 29, 2019, and Defendant has failed to abide by his Agreement to ensure that funds "adequate to cover the amount to be debited by [Kapitus] remain in the account." *Id.*, Ex. B at 1.

## ARGUMENT

### I. DEFENDANT FALSELY REPRESENTED IN WRITING THAT MERCHANT'S FINANCIAL CONDITION WAS UNCHANGED.

Defendant contends that because the application he submitted was not directly to Kapitus it is not fair game for Kapitus to rely on it. Defendant also contends that because the Pre-Funding call was not a writing, that his representations about the financial condition of Merchant

---

[1] The Trustee in this case filed a Report of No Distribution on May 29, 2020, suggesting that this amount is unlikely to be substantially collectable.

4

are insufficient as a matter of law. Defendant simply ignores the allegations of the Amended Complaint. As set forth above, Defendant made representations in the Application, submitted financial records from a time period where Merchant's financial picture looked favorable, and then made written statements in the execution of the Agreement that Merchant's financial condition was "unchanged." Defendant made these written statements despite knowing that the closing of Westlake Hospital had materially diminished his practice and that a substantial receivable was, in fact, largely uncollectible.

To establish the requirements of § 523 (a)(2)(B), Plaintiff must allege as follows: 1) Defendant made a statement in writing, 2) that the statement was regarding his financial condition, 3) that the statement was materially false, 4) that Defendant made the statement with an intent to deceive, and 5) that Plaintiff reasonably relied on the statement. *Tillman Enterprises, LLC v. Todd S. Horlbeck (In re Horlbeck)*, 589 B.R. 818, 842 (Bankr. N.D. Ill. 2018) (Baer, J.) (awarding summary judgment to plaintiff under § 523 (a)(2)(B)). Taking the allegations in Plaintiff's Amended Complaint as true, this Court should find that Plaintiff has sufficiently alleged the requirements of § 523 (a)(2)(B) and deny Defendant's motion.

1. <u>Defendant's Statements in Writing Regarding His Financial Condition.</u>

Defendant claims that even if the application dated June 26, 2018, is relating to the Agreement, it contains "zero statements concerning the financial condition of [Merchant]." Mot. at 3-4. This contention ignores the allegations of Plaintiff's § 523 (a)(2)(B) claim that Defendant submitted the written Application, months of bank statements, and other financial information to convince Plaintiff to purchase $92,400 of its future receivables. The Application stated that Merchant had gross receipt of nearly $200,000 and that Defendant would give immediate notification of "any change in the information or documents" or any change in "Applicant's

5

financial condition." Defendant also submitted three months of bank statements, providing assurance to Kapitus that if it agreed to purchase Merchant's receipts, they would be collectible. Significantly, after providing this information to Kapitus, Defendant thereafter affirmatively represented in the Agreement:

> Merchant's bank statements and financial information, provided to PURCHASER fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material changes, financial or otherwise, in such condition, operation or ownership of Merchant . . . No material changes, financial or otherwise, in the condition, operation or ownership of Merchant are in any way expected or anticipated.

Agreement, Ex. B, Section 2.1 Financial Condition and Financial Information. And while Defendant's statements in the Pre-Funding Call were not in writing, they bolster Defendant's written statements. They also provided yet another reminder to Defendant that he agreed in writing that he would advise Kapitus of any change to his financial condition. Based on these written representations about Merchant's financial condition, Kapitus chose to purchase the receivables.

### 2. Defendant's Statements Were Materially False

A statement is materially false where it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Webster Bank, N.A. v. Contos (In re Contos)*, 417 B.R. 557, 564 (Bankr. N.D. Ill. 2009). In the alternative, Plaintiff may prove that "but for" the misrepresentation, the creditor would not have "extended money, property, services, or credit." *Id.* "[W]ritings with pertinent omissions may [also] qualify as materially false for purposes of § 523 (a)(2)(B)." *Id., citing Cmty. Bank of Homewood-Flossmoor v. Bailey (In re Bailey),* 145 B.R. 919, 930 (Bankr. N.D. Ill. 1992).

6

Here, Defendant's statements were materially false in two respects. First, the gross receipts reflected in its Application, the May, June, and July 2019 bank statements, and the related financial information provided by Defendant portrayed a significantly more favorable financial picture of Merchant because they reflect a time period when Defendant performed services for patients of Westlake Hospital and when Defendant was authorized to admit patients at the hospital. Second, these submissions omitted any reference to the $77,280 owed by Westlake that were likely to be uncollectible. Given that Plaintiff's funding *exceeded* this likely uncollectible amount, there is no question it was a material. Accordingly, Plaintiff has adequately alleged both 1) a material misrepresentation: that Merchant's financial condition was unchanged; and 2) a material omission: Westlake's closing made amounts owed to Merchant likely uncollectible.

       3.  <u>Defendant's Intent to Deceive May Be Inferred from the Circumstances</u>

A creditor can establish an intent to deceive through direct evidence, or such intent can be logically inferred from a false representation that the debtor knows or should know will induce action. *Webster Bank, N.A.*, 417 B.R. at 565. Because intent is a factual issue, it is "left to the bankruptcy court that presides over the trial." *Id.* Here, the Amended Complaint alleges that Defendant made statements with an intent to deceive and that he made those statements knowing that they were "false, untrue, and misleading at the time they were made." Am. Compl. ¶¶ 50-51. In addition, the timing of Defendant's misstatements support an inference that he intended to deceive Kapitus.

Defendant represented in the Application that he would disclose if his financial condition changed, and he affirmatively represented in the Agreement that his financial condition was, in fact, unchanged from he had submitted in connection with the Agreement. In fact, all of the

7

documents Defendant submitted were from a time period prior to the hospital's closing. The only logical inference from the timing of these events is that Defendant knew that he submitted the information that it was inaccurate, and he did so to induce Kapitus to fund. Kapitus thereafter funded based on these false representations. And while Defendant later used the hospital's closure as a reason to justify his failure to pay Kapitus, *see id* ¶ 38, he knew no later than August 6, 2019, that his financial condition had materially changed for the worse. *Id.* ¶ 29.

### 4. Kapitus Reasonably Relied on Defendant's Statements

"Creditors are not required to conduct an investigation before entering into agreements with prospective debtors." *Webster Bank, N.A.,* 417 B.R. at 566. Among the factors that courts consider when assessing the reasonableness of the creditor's reliance is whether the creditor followed its standard practices to evaluate creditworthiness, whether its practices are customary in the industry, and whether there were any "red flags" surrounding debtor's application. *Id.* Here, too, Kapitus has specifically alleged in its Amended Complaint that its reliance was reasonable. *Am. Compl.*¶ 53. In addition, Kapitus alleges that it undertook its process of obtaining Merchant's financial information along with Defendant's representations and warranties, which is "typical for the alternative financing industry." *Id* ¶ 18. Because Plaintiff has properly alleged, as a matter of law, its § 523 (a)(2)(B) claim, Defendant's motion to dismiss should be denied.

## II. DEFENDANT'S CONDUCT VIOLATES § 523(a)(4)

As a threshold matter, Defendant contends that Plaintiff has not adequately alleged its claims under § 523(a)(4). Although fraud, such as that required by § 523(a)(4), must be alleged with particularity under Rule 9(b), that requirement must be read "in conjunction with Rule 8(a)'s 'short and plain statement' or notice-pleading requirement." *Zamora v. Jacobs (In re*

8

*Jacobs)*, 403 B.R. 565, 573 (Bankr. N.D. Ill. 2009). Thus, a plaintiff alleging fraud "need only set forth the basic outline of the scheme, who made what representation and the general time and place of such misrepresentation." *Id.* Plaintiff has more than amply alleged Defendant's scheme for § 523(a)(4) purposes:

- On August 26, 2019, Defendant sold $92,400 of Merchant's future receivables to Kapitus, which was to be paid to Kapitus out of a single account where Defendant had pre-authorized an ACH debit, *see* Am. Compl. ¶ 19;
- Although Defendant is still practicing medicine, Kapitus's payments have been blocked since December 29, 2019, *see id.* ¶ 40; and
- Defendant has converted for his own use the receivables sold to Kapitus, which Defendant was entrusted to turn over according to the Agreement, *see id.* ¶¶ 39, 58, 61, 64.

Defendant further argues that Plaintiff has failed to state a § 523(a)(4) claim because whether the parties are fiduciaries is a matter of federal, not state law. Yet even if federal bankruptcy law were to hold that Defendant – who held all the knowledge in the relationship – was not a fiduciary (which Plaintiff disputes), Defendant ignores that Plaintiff has also alleged embezzlement. Accordingly, Defendant's motion to dismiss Count II should likewise be denied.

### 1. The Parties Were Fiduciaries When Defendant Committed Defalcations.

Under Virginia law, an express trust is created when money is to be kept or used as a separate fund for the benefit of the payor or third person. *Id.* ¶ 57. Application of federal law, however, does not yield a different result. Courts recognize a fiduciary capacity where property is held for another, and where "one party to the relation is incapable of monitoring the other's performance of his undertaking," the law refuses to treat the parties as "a relation at arm's length

between equals." *Kontos v. Manevska (In re Manevska)*, 587 B.R. 517, 531 (Bankr. N.D. Ill. 2018). Fiduciary relationships also exist where property is held for another under "formal separation and ownership rules." *In re McGee*, 353 F. 3d 538 (7th Cir. 2003) (fiduciary relationship where landlord was to keep tenant deposits in separate account "designed to ensure that the money would be available for return to the tenants if they kept their own promises…."). Plaintiff specifically alleges that "Merchant and Debtor were to hold the Receipts in the Account for Plaintiff's benefit." Am. Compl. ¶ 57. The Receipts were to be kept in distinct Account to provide Plaintiff the ability to debit their owned Receipts. *Id.* ¶ 22. Because the Agreement does not provide for Kapitus to monitor Merchant's income, but rather relies on Defendant to ensure that the receivables Kapitus purchased are transmitted to it, the parties are not equal. Just as Virginia law understands this unequal position creates a trust relationship, federal law likewise recognizes that such parties are fiduciaries. Hence, Plaintiff has properly alleged a claim under § 523(a)(4).

## 2. Kapitus Entrusted Defendant to Remit the Receivables It Had Purchased. and Defendant Instead Embezzled those Receipts.

Even if this Court were to find that the parties are not in a fiduciary relationship, there are "multiple facets" of a § 523(a)(4) claim, *see Zamora*, 403 B.R. 576, and Plaintiff has also alleged that Defendant's conduct constitutes embezzlement. Embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Kontos,* 587 B. R. at 534 (Bankr. N.D. Ill. 2018), *quoting In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989). To prove embezzlement, a plaintiff must allege that "(1) the debtor appropriated funds for his or her own benefit, and (2) the debtor did so with fraudulent intent or deceit." *Zamora,* 403 B.R. at 575. Fraudulent intent may be shown by circumstantial evidence; by way of example, the court in *Zamora* explained that "embezzlement

is shown where the debtor had sole access to the creditor's funds, and despite knowing that the creditor wanted the funds returned, surreptitiously took them for his own benefit." *Id.*

As alleged in Paragraph 36 of the Amended Complaint, Defendant continues to perform services at Merchant, where he was "too busy seeing patients" to take Kapitus's calls, and where Merchant's website states that Defendant is accepting new patients. *Id.* ¶ 39. By withholding these amounts which Kapitus had entrusted Merchant and Defendant to collect and remit, Defendant has wrongfully converted these funds for his own use. Accordingly, Plaintiff has adequately alleged its § 523(a)(4) claim.

## Conclusion

For the above reasons, Kapitus has sufficiently alleged facts to support each of the Counts in its Complaint. Accordingly, Kapitus respectfully requests that this Court deny Debtor's Motion to Dismiss Its Amended Complaint, direct the Debtor to file an answer to the Complaint, and provide such other and further relief as this Court may deem just and proper.

Dated: March 5, 2021

                                         **KAPITUS SERVICING INC., AS SUB-SERVING AGENT FOR KAPITUS LLC**

                                         /s/     Dustin B. Allen
                                                 One of Its Attorneys

Lydia A. Bueschel (IL ARDC No. 6274638)
Dustin B. Allen (IL ARDC No. 6312451)
Valentine Austriaco & Bueschel, P.C
105 W. Adams Street 35th Floor
Chicago, IL  60603
312-288-8285

lbueschel@vablawfirm.com
dallen@vablawfirm.com