20-0132

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | Chapter 7 |
| | ) | |
| **Lyndon D. Taylor,** | ) | No. **20-07420** |
| | ) | |
| Debtor. | ) | Judge: Hon. Janet S. Baer |
| | ) | |
| ------------------------------------------------ | ) | |
| **Kapitus Servicing, Inc., as sub-servicing** | ) | |
| **Agent for Kapitus LLC,** | ) | |
| | ) | |
| Plainitff, | ) | |
| | ) | |
| vs. | ) | Adv. No. **20-00221** |
| | ) | |
| **Lyndon D. Taylor**, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER TO PLAINTIFF'S AMENDED ADVERSARY COMPLAINT

NOW COMES Lyndon D. Taylor (Dr. Taylor"), by and through his attorney David E. Cohen answering Plaintiff's Amended Adversary Complaint as follows:

### Jurisdiction and Venue

1. Kapitus brings this adversary proceeding pursuant to 11 U.S.C. § 523(a)(2)(B), 11 U.S.C. § 523(a)(4), and Rule 4007, Federal Rules of Bankruptcy Procedure.

Answer: Defendant admits the averments in Paragraph 1 of Plaintiff's Complaint.

2. The Lyndon D. Taylor is a Debtor in Chapter 7 Case No. 20-16830 in this Court (the "Bankruptcy Case"), and Kapitus is one of his creditors.

Answer: Defendant admits the averments in Paragraph 2 of Plaintiff's Complaint.

3. This is a core proceeding over which this Court has jurisdiction pursuant to 28

U.S.C. § 157(b)(2)(I).

Answer: Defendant admits the averments in Paragraph 3 of Plaintiff's Complaint.

4. Venue in this court is proper pursuant to 28 U.S.C. § 1409.

Answer: Defendant admits the averments in Paragraph 4 of Plaintiff's Complaint.

## Parties

5. Plaintiff, Kapitus Servicing, Inc. is a Virginia corporation with its principal places of business at 2500 Wilson Boulevard, Suite 350 Arlington, Virginia 22201 and 120 West 45th Street, New York, New York 10036.

Answer: Defendant is without knowledge or information sufficient to form a belief as to the averments of Paragraph 5 of Plaintiff's Complaint.

6. Lyndon D. Taylor ("Debtor") is an individual residing at 2 Oak Brook Club Drive, Unit C-304, Oak Brook, Illinois 60523.

Answer: Defendant admits the averments in Paragraph 6 of Plaintiff's Complaint

7. Upon information and belief, Lyndon D. Taylor, M.D., LLC ("Merchant") is an Illinois corporation with three locations and three assumed names: Healthcare for Women – North Riverside; Healthcare for Women – Melrose Park; and Healthcare for Women – Oak Park. The assumed name of Healthcare for Women – Melrose Park is listed with the Illinois Secretary of State as "Inactive," while the other two are listed as "Active."

Answer: Defendant denies any assumed names are active. Defendant admits the remaining averments in Paragraph 7 of Plaintiff's Complaint.

8. Merchant is an insider of the Debtor pursuant to 11 U.S.C. §101(31)(A).

Answer: Defendant admits the averments in Paragraph 8 of Plaintiff's Complaint.

9. According to Debtor's Schedule A/B, Debtor is 100 percent owner of Merchant.

Answer: Defendant admits the averments in Paragraph 9 of Plaintiff's Complaint.

10. Upon information and belief, Debtor is, and was, the Merchant's sole owner, controlled Merchant, and made all decisions and statements to Plaintiff relevant to the issues herein.

Answer: Defendant admits the averments in Paragraph 10 of Plaintiff's Complaint.

## Background

11. As detailed below, Debtor fraudulently induced Plaintiff Kapitus into purchasing future accounts receivable from Merchant, and later improperly diverted the purchased receivables away from Kapitus and for his own benefit.

Answer: Defendant denies the averments in Paragraph 11 of Plaintiff's Complaint.

*Debtor's Misrepresentations to Kapitus to Induce the Purchase of Receivables*

12. On or about June 26, 2018, Debtor, reaffirmed his previously completed application for funding ("Application") for Merchant. A true and accurate copy of the Application upon which Kapitus relied is attached hereto as Exhibit A.

Answer: Defendant admits submitting the Application attached as Exhibit A to Bankers Healthcare Group, LLC in May 7, 2018. Defendant denies the remaining averments in Paragraph 12 of Plaintiff's Complaint.

13. In the Application, Debtor represented that Merchant had prior year gross sales of $191,364, and that he was seeking funding of $150,000 for "business development." (Ex. A.)

Answer: Defendant admits the averments in Paragraph 13 of Plaintiff's Complaint.

14. The Application further included the representation, acknowledgment and agreement by Debtor and Merchant that it would immediately notify Kapitus of "any change in the information or documents provided . . . in connection herewith or Applicant's financial condition." (Ex. A).

Answer: Defendant denies the averments in Paragraph 14 of Plaintiff's Complaint.

15. Thereafter, Debtor provided bank statements for a time period from May through July of 2019.

Answer: Defendant admits the averments in Paragraph 15 of Plaintiff's Complaint.

16. Kapitus relied on these bank statements to determine Merchant's eligibility for funding.

Answer: Defendant is without knowledge or information sufficient to form a belief as to the averments of Paragraph 16 of Plaintiff's Complaint.

17. After receiving the Application, Kapitus provided Debtor a Revenue Based Factoring Agreement, Security Agreement, and Guaranty (together the "Agreement"), which outlined the purchase terms and included representations that Debtor and Merchant were required to make. A true and accurate copy of the Agreement as executed by Debtor is attached as Exhibit B.

Answer: Defendant admits that the Agreement attached as Exhibit B was tendered to Lyndon D. Taylor, M.D., LLC. Defendant denies the remaining averments in Paragraph 17 of Plaintiff's Complaint.

18. Kapitus requires, as a threshold step in its consideration of whether to purchase a potential merchant's future receivables, that each merchant sign the agreement and provide certain written representations about its financial situation, operational plans, and intentions.

4

Because Kapitus's funding process is truncated from that of a standard financing institution as is typical for the alternative financing industry, Kapitus relies heavily upon a merchant's representations and warranties made in each agreement and confirmed in a recorded call. In fact, Kapitus's counter signature to the agreement and funding are the last steps in the financing process.

Answer: Defendant is without knowledge or information sufficient to form a belief as to the averments of Paragraph 18 of Plaintiff's Complaint.

19. In the Agreement signed by Debtor on August 26, 2019, Debtor agreed to sell $93,400.00 (the "Receipts Purchased Amount") of Merchant's future business receipts in exchange for a payment from Kapitus of $66,000.00 (the "Purchase Price"). (Ex. B at 1).

Answer: Defendant denies the averments in Paragraph 19 of Plaintiff's Complaint.

20. Under the Agreement, Kapitus was to purchase all of Merchant Lyndon D. Taylor, M.D., LLC's "future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from [Merchant]'s customers and/or other third party payors..." whether paid by "cash, check, electronic transfer, or other form of monetary payment in the ordinary course of business" (collectively, the "Receipts") until the time that the Merchant paid the Receipts Purchased Amount in full. Ex. B at 1.

Answer: Defendant admits the averments in Paragraph 20 of Plaintiff's Complaint.

21. Once Kapitus counter executed the Agreement and funded the Purchase Price, it became the owner of Merchant's Receipts up to the Receipts Purchased Amount of $92,400.00.

Answer: Defendant is without knowledge or information sufficient to form a belief as to the averments of Paragraph 21 of Plaintiff's Complaint.

22. Under the terms of the Agreement, signed by Debtor on behalf of Merchant Lyndon D. Taylor, M.D., LLC, and individually as its Guarantor, Debtor agreed to and represented that he would collect and deposit all Receipts into a designated bank account (the "Account") and provide irrevocable authorization to Kapitus to make ACH debits on a weekly basis from the Account, representing a percentage of the Receipts, until the Receipts Purchase Amount was remitted. (Ex. B at 3, Sec. 1.1).

Answer: Defendant denies the averments of Paragraph 22 of Plaintiff's Complaint.

23. Debtor, on behalf of Merchant, and individually as its Guarantor, further agreed that "Merchant understands that it is responsible for ensuring that funds adequate to cover the amount to be debited by PURCHASER remain in the account." Ex. B at 1.

Answer: Defendant denies the averments of Paragraph 23 of Plaintiff's Complaint.

24. Debtor further made representations in Section II (entitled REPRESENTATIONS, WARRANTIES AND COVENANTS) of the Agreement, including, but not limited to:

> 2.1 **Financial Condition and Financial Information**. Merchant is solvent, and no transfer of property is being made by Merchant and no obligation is being incurred by Merchant in connection with this Agreement with the intent to hinder, delay, or defraud either present or future creditors of Merchant. Merchant's bank statements and financial information, provided to PURCHASER fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant is current on any and all lease, rent or mortgage payments due. No material changes, financial or otherwise, in the condition, operation or ownership of Merchant are in any way expected or anticipated. Merchant has a continuing, affirmative obligation to advise PURCHASER of any material change in its financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and the Merchant shall

6

provide them to PURCHASER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

Ex. B at 3 (emphasis added).

<u>Answer</u>: Defendant denies the averments of Paragraph 24 of Plaintiff's Complaint.

25.   The Agreement further emphasized:

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH ANY APPLICATION FOR FUNDING, IN ANY DOCUMENT SUBMITTED AND/OR THIS AGREEMENT WILL RESULT IN A SEPARATE CAUSE OF ACTION, INCLUDING BUT NOT LIMITED TO A CLAIM AGAINST THE OWNER/GUARANTOR FOR FRAUD OR FRAUDULENT INDUCEMENT.**

Ex. B at 2 (emphasis in original).

<u>Answer</u>: Defendant is without knowledge to determine if the Agreement "emphasized" any section as that word is not defined. Defendant admits the remaining averments of Paragraph 25 of Plaintiff's Complaint.

26.   The Debtor personally guaranteed Merchant's full performance under the Agreement, including performance of all representations, warranties, and covenants. (Ex. B. at 6-7).

<u>Answer</u>: Defendant admits the averments of Paragraph 26 of Plaintiff's Complaint.

27.   After Debtor signed the Application, provided business and financial information, and signed the Agreement, Kapitus and the Debtor engaged in a recorded telephone call on August 29, 2019, (the "Pre-Funding Call"), which occurred prior to the funding of the Purchase Price and the execution of the Agreement by Kapitus. During the Pre-Funding Call, Debtor represented that: (a) Debtor did not anticipate closing or selling the Merchant in the next twelve months; (b) neither Debtor nor the Merchant planned on filing for bankruptcy in the foreseeable future; and (c) Debtor and the Merchant were not in arrears on any loans or with any financial institutions. Debtor's oral statements

made in the Pre-Funding Call bolstered the written business and financial information that Debtor had previously provided and painted a favorable financial picture intended to induce Kapitus into approving the funding.

Answer: Defendant denies providing the Application to Plaintiff or that he intended to induce Kapitus into approving the funding. Defendant is without knowledge or information sufficient to form a belief as to the averments that Debtor's oral statements made in the Pre-Funding Call bolstered the written business and financial information that Debtor had previously provided to Kapitus. Defendant admits the remaining averments of Paragraph 27 of Plaintiff's Complaint.

28.    In addition, the Kapitus representative in the Pre-Funding Call further explained to Debtor that he was required to notify Kapitus of any changes relating to the Merchant and that verification of information in the Call was the last step of the process prior to funding.

Answer: Defendant admits the averments of Paragraph 28 of Plaintiff's Complaint.

29.    Contrary to Debtor's representations in the Application, Agreement, and Pre-Funding Call, Debtor knew – but did not disclose – that his practice would materially change because the only hospital where he was authorized to admit patients, Westlake Hospital, and where he performed services remitted to Merchant, had filed for Chapter 7 bankruptcy relief on August 6, 2019 in the Northern District of Illinois, Case No. 19-22881.

Answer: Defendant admits that Westlake Hospital filed for chapter 7 bankruptcy relief on august 6, 2019. Defendant denies the remaining averments of Paragraph 29 of Plaintiff's Complaint.

30. In fact, Debtor, on behalf of the Merchant, ultimately filed a claim in the Pipeline- Westlake Hospital bankruptcy for $77,280 of "physician services provided," including for the maximum amount allowable of services provided within 180 days of the filing of bankruptcy. *See* Claim No. 94-1 of Lyndon D. Taylor, M.D, attached as Exhibit C.

Answer: Defendant admits the averments of Paragraph 30 of Plaintiff's Complaint.

31. Despite knowing that a significant source of income for Merchant was ending, Debtor affirmed in the Agreement that "[n]o material changes, financial or otherwise, in the condition, operation or ownership of Merchant are in any way expected or anticipated." Debtor also acknowledged in the Agreement that he had "a continuing, affirmative obligation to advise [Kapitus] of any material changes in its financial condition, operation or ownership." Nevertheless, both at the time he signed the Agreement and three days later when the Pre-Funding Call took place, Debtor failed to disclose the Westlake Hospital bankruptcy.

Answer: Defendant is without knowledge or information sufficient to form a belief as to the averments of Paragraph 31 of Plaintiff's Complaint.

32. In fact, before Debtor signed the Agreement and undertook the Pre-Funding Call, he had received an August 6, 2019 letter to all employees and physicians advising them that "Westlake has lost nearly $3 million per month and remained over 80 percent empty. As of this month, Westlake Hospital has run out of money. Despite a months-long effort by Westlake Hospital to find a buyer, none of the entities it spoke with believed it was financially feasible to keep the Hospital open." Letter to Westlake Employees and Physicians attached as Exhibit D.

Answer: Defendant admits the averments of Paragraph 32 of Plaintiff's Complaint.

9

33. Without knowledge of the Westlake Hospital bankruptcy and in reliance on the materials submitted and the representations made by Debtor in the Agreement, the Application, and the Pre-Funding Call, Kapitus agreed to purchase receivables of Merchant for the Purchase Price of $66,000.00, which, after Debtor authorized certain fees to be paid from this Purchase Price, resulted in a wire transfer on August 29, 2019 of $64,330 to Merchant.

Answer: Defendant denies submitting and reliance by Plaintiff on the Application. Defendant is without knowledge or information sufficient to form a belief as what materials and representations made by the Defendant were relied on by Plaintiff. Defendant admits the remaining averments of Paragraph 33 of Plaintiff's Complaint.

### *Debtor Diverts, and Does Not Remit, the Receivables Owned by Kapitus*

34. Merchant defaulted on its payment obligations under the Agreement in December 2019, when ACH debits started being returned for non-sufficient funds in Merchant's designated account, less than four months after having received the Kapitus funding.

Answer: Defendant admits the averments of Paragraph 34 of Plaintiff's Complaint.

35. On March 16, 2020, Debtor filed for Chapter 7 bankruptcy protection.

Answer: Defendant admits the averments of Paragraph 35 of Plaintiff's Complaint.

36. In total, Kapitus was only able to draft 17 ACH payments before the Debtor cut Kapitus off from debiting the purchased Receipts. These 17 successful withdrawals represented less than 16 percent of the receivables purchased by Kapitus.

Answer: Defendant admits the averments of Paragraph 36 of Plaintiff's Complaint.

37. Upon information and belief, the Debtor and Merchant stopped depositing its Receipts into the Account in violation of the Agreement (Ex. B at 1), leading to the pre-authorized Kapitus ACH debits to be returned for non-sufficient funds.

Answer: Defendant denies the averments of Paragraph 37 of Plaintiff's Complaint.

38. Only after defaulting on the Agreement and allowing the Kapitus pre-authorized ACH debits to fail, did Debtor acknowledge to Kapitus on January 15, 2020, that Westlake Hospital had shut down and that the money that he had made from the hospital was supporting his practice – precisely the facts Debtor knew before obtaining the Kapitus funding but failed to disclose. *See* Ex. D.

Answer: Defendant admits telling Kapitus on January 15, 2020 that Westlake Hospital shut down. Defendant denies the remaining averments of Paragraph 38 of Plaintiff's Complaint.

39. On information and belief, Debtor and Merchant continue to operate. As a result, Merchant's Receipts that are, in fact, owned by Kapitus under the Agreement have been wrongfully diverted. For example, when a representative of Kapitus attempted to contact Debtor on February 11, 2020, the Merchant's office told the Kapitus representative that Debtor was unable to take the telephone call because he was too busy seeing clients. In addition, Merchant's website indicates that it is in operation and accepting client appointment. *See* www.oakparkobgyn.com (last visited December 30, 2020).

Answer: Defendant admits Merchant continued to operate until March 20, 2020, when merchant filed bankruptcy. Defendant is without knowledge to admit or deny the remaining averments of Paragraph 39 of Plaintiff's Complaint.

40. After the ACH payment on December 29, 2019, was returned for non-sufficient funds, all further payments were returned for non-sufficient funds and no further payments were received from Merchant or Debtor.

Answer: Defendant is without knowledge or information sufficient to form a belief as to the averments of Paragraph 40 of Plaintiff's Complaint.

41. In total, Kapitus is owed the principal amount of $77,445.00, plus a Default Fee of $2,500.00, returned ACH fees of $700.00, for a total balance of $80,645.00.

Answer: Defendant denies the averments of Paragraph 41 of Plaintiff's Complaint.

42. In addition, under paragraph 3.3 of the Agreement, Debtor and Merchant are also liable for court costs and attorney's fees equal to 25 percent of any balance due, which amounts to $20,161.25.

Answer: Defendant denies the averments of Paragraph 42 of Plaintiff's Complaint.

## COUNT I
### (Non-Dischargeability of Debtor Pursuant to 11 U.S.C. § 523(a)(2)(B))

43. Plaintiff repeats and realleges paragraphs 1 through 42 and incorporates the same as though set forth herein.

Answer: Defendant incorporates his answers to the averments in paragraphs 1 through 42 of Plaintiff's Complaint as his answer to Paragraph 43 of Count I of Plaintiff's Complaint.

44. Pursuant to 11 U.S.C. § 523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive, is non-dischargeable.

Answer: Defendant admits the averments of Paragraph 44 of Count I of Plaintiff's Complaint.

45.     Prior to entering into the Agreement, the Debtor provided bank statements and other financial information to the Plaintiff as an indicator of the Merchant's financial condition.

Answer: Defendant admits the averments of Paragraph 45 of Count I of Plaintiff's Complaint.

46.     Debtor and the Merchant, an insider of the Debtor, obtained money from Plaintiff by making materially false statements in the Agreement respecting the Merchant's financial condition on which Plaintiff reasonably relied.

Answer: Defendant denies the averments of Paragraph 46 of Count I of Plaintiff's Complaint.

47.     As alleged above, Debtor, on behalf of Merchant, and individually as Guarantor, represented under the Agreement that "Merchant's bank statements and financial information, provided to PURCHASER fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material changes, financial or otherwise, in such condition, operation or ownership of Merchant." In addition, Debtor represented that "[n]o material changes, financial or otherwise, in the condition, operation or ownership of Merchant are in any way expected or anticipated. Merchant has a continuing, affirmative obligation to advise PURCHASER of any material change in its financial condition, operation or ownership."

Answer: Defendant admits the averments of Paragraph 47 of Count I of Plaintiff's Complaint.

48.     The Plaintiff reasonably relied on Debtor's statements regarding Merchant, including that Merchant's financial information provided to Plaintiff fairly represented the true financial condition of the entity, that there had been no material change in financial condition or operation of the Merchant, and that there was no expected change in the financial condition or operation of the Merchant.

<u>Answer</u>: Defendant is without knowledge or information sufficient to form a belief as to the averments of Paragraph 48 of Count I of Plaintiff's Complaint.

49. As alleged above, Debtor knew that Westlake Hospital had filed for Chapter 7 bankruptcy and that the financial condition and operation of the Merchant would be significantly and adversely impacted by the closure of Westlake Hospital.

<u>Answer</u>: Defendant admits Plaintiff had previously alleged the averments restated in Paragraph 49 of Count I of Plaintiff's Complaint.

50. Debtor's conduct described above constitutes obtaining money by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which the Debtor made with the intent to deceive.

<u>Answer</u>: Defendant denies the averments of Paragraph 50 of Count I of Plaintiff's Complaint.

51. Debtor knew these representations were false, untrue, and misleading at the time they made them.

<u>Answer</u>: Defendant denies the averments of Paragraph 51 of Count I of Plaintiff's Complaint.

52. Debtor caused these false statements to be made in writing, including, but not limited to, publishing the statements in the Agreement.

<u>Answer</u>: Defendant denies the averments of Paragraph 52 of Count I of Plaintiff's Complaint.

53. Consequently, Debtor's debt to Plaintiff is one for money obtained by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which the Debtor made with intent to deceive. Accordingly, Plaintiff is entitled to an Order from this Court under 11 U.S.C. § 523(a)(2)(B), declaring Debtor's debt to Plaintiff is non-dischargeable and awarding money damages pursuant to the request herein. Plaintiff is also entitled to attorneys' fees and costs incurred in prosecuting this Complaint.

Answer: Defendant denies the averments of Paragraph 53 of Count I of Plaintiff's Complaint.

## COUNT II
### (Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4))

54. Plaintiff repeats and realleges paragraphs 1 through 53 and incorporates the same as though set forth herein.

Answer: Defendant incorporates his answers to the averments in paragraphs 1 through 53 of Plaintiff's Complaint as his answer to Paragraph 54 of Count II of Plaintiff's Complaint.

55. Debtor's liability to Plaintiff, as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of section 523(a)(4) of the Bankruptcy Code.

Answer: Defendant denies the averments of Paragraph 55 of Count II of Plaintiff's Complaint.

56. Debtor was in a fiduciary relationship with Kapitus under the Agreement, which is Agreement is governed by Virginia law. *See* Ex. B at 4, Section 4.5.

Answer: Defendant admits Section 4.5 of the Agreement contains a Virginia choice of law provision "to the extent not preempted by federal law. Defendant denies the remaining averments of Paragraph 56 of Count II of Plaintiff's

57. Debtor and Merchant had a fiduciary duty to Kapitus when they began holding Kapitus's purchased receivables in trust for Kapitus. Under Virginia law, an express trust is created when money is to be kept or used as a separate fund for the benefit of the payor or a third person. Here, the parties entered into an express trust with regards to the purchased Receipts identified in the Agreement, and Merchant and Debtor began collecting Receipts. Merchant and Debtor were to hold the Receipts in the Account for Plaintiff's benefit. (Ex. B.

at 1 "Merchant understand that it is responsible for ensuring that funds adequate to cover the amount to be debited by PURCHASER remain in the account.").

<u>Answer</u>: Defendant denies any fiduciary duty to Plaintiff. Defendant is without knowledge or information sufficient to form a belief as to the remaining averments of Paragraph 57 of Count II of Plaintiff's

58. In breach of their fiduciary duties, Debtor and Merchant failed to deposit the Receipts purchased by Kapitus in the Account. On information and belief, Debtor and Merchant have deposited Receipts into an account other than the Account identified in the Agreement, as a means of wrongfully diverting the Kapitus Receipts for their own use.

<u>Answer</u>: Defendant denies the averments of Paragraph 58 of Count II of Plaintiff's Complaint.

59. Alternatively, Debtor and Merchant's misappropriation of the Receipts was embezzlement under section 523(a)(4) of the Bankruptcy Code.

<u>Answer</u>: Defendant denies the averments of Paragraph 59 of Count II of Plaintiff's Complaint.

60. Plaintiff purchased all of the Merchant's Receipts generated until the Receipts Purchased Amount was paid in full.

<u>Answer</u>: Defendant denies the averments of Paragraph 60 of Count II of Plaintiff's Complaint.

61. Debtor embezzled Plaintiff's Receipts by fraudulently appropriating Plaintiff's property after they were entrusted to collect them.

<u>Answer</u>: Defendant denies the averments of Paragraph 61 of Count II of Plaintiff's Complaint.

62. Upon information and belief, Debtor transferred the $64,330 Purchase Price funding and/or Receipts into accounts not accessible by Plaintiff and/or blocked sufficient payment of the Receipts from the Account.

<u>Answer</u>: Defendant denies the averments of Paragraph 62 of Count II of Plaintiff's Complaint.

63. Plaintiff sustained damages as a result of Debtor's fraud and defalcation while acting as a fiduciary, their embezzlement and/or larceny of the funding and receivables.

Answer: Defendant denies the averments of Paragraph 63 of Count II of Plaintiff's Complaint.

64. Debtor's debt to Plaintiff is a debt for fraud or defalcation while acting in a fiduciary capacity. In the alternative, Debtor committed embezzlement and/or larceny. Plaintiff is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(4), the Debtor's debt to Plaintiff is non-dischargeable and a judgment for money damages. Plaintiff is also entitled to its attorneys' fees incurred in prosecuting this Complaint.

Answer: Defendant denies the averments of Paragraph 64 of Count II of Plaintiff's Complaint.

WHEREFORE, Lyndon D. Taylor respectively requests that this Court enter judgment in favor of Defendant and against Plaintiff, and for such other and further relief that this Court shall deem just.

LYNDON D. TAYLOR

By: /s/David E. Cohen
His Attorney

David E. Cohen
Fisher Cohen Waldman Shapiro, LLP
1247 Waukegan Road
Suite 100
Glenview, Illinois 60025
312/606-3451 – Tel
dcohen@fishercohen.com – E-mail
Attorney No. 6192149